Good morning. Our first case up for oral argument this morning is United States v. Robinson and Swanson. Whenever you are ready, Mr. Rayfield. Good morning. And I understand you're going to take 9 minutes and then your co-counsel is going to take 3. Is that correct? Well, 11 and 4. For your opening, you want to save 2 for rebuttal. Right, exactly. Thank you. Whenever you're ready, please. Sure. May it please the Court, Mike Rayfield on behalf of Pierre Robinson. I want to focus on the 3 combined facts that make this case so unusual. One is that Anise Robinson remembered absolutely nothing about Mr. Robinson or her identification of Mr. Robinson. Two is that nothing in the record suggests that she was feigning her memory loss. And third is something that frankly I wish we'd highlighted a little bit more in the briefs, which is that unlike all of the cases where courts have faced an issue like this, the only reason Anise was at this trial was to verify her identification. She was there to address one topic and one topic only, and that was the topic on which she was cross-examined on. That makes this case different from this Court's decisions in Schaeffer's Cookson, the Supreme Court's decision in Owens, and even the Mississippi Supreme Court's decision in Gopher. Why would that matter? Why would, if you're there for more than one topic, be relevant if you can't remember any of the topics? Well, because at least when the witness with memory loss is someone who was at least involved with the events in question, you can ask that witness questions related to the event. So take Owens, for example, where the witness remembered getting assaulted at the prison, but he couldn't remember why he believed that it was the defendant who assaulted him. You could still ask a witness like that, for example, well, were you near the defendant's cell that day? Had you ever met the defendant before? How many times have you encountered him? Was there anything distinctive about him that would stand out even while you're getting assaulted? And depending on the answers that you get, you might be able to demonstrate that the witness was unlikely to make a positive ID at that time. With Anise, the defense couldn't cast doubt on her ability or her incentive to identify Robinson in 2015. Well, the incentive, they asked a lot of questions about bias. And she was able to answer those questions about relationship with the store owner, relationship with the victim's family members, her own involvement with gangs. Those all went directly to bias and potential incentive. Well, the only question that she answered, the only bias-related question that she answered in the affirmative, in a way that would somehow actually suggest that she was biased, was the question. No, it's not how you answer it. It's the question was posed. There were plenty of questions about bias posed that she was able to say yes or no to and elaborate on and not say she couldn't remember. I respectfully disagree with that because I think the questions that are posed are not what's important. Attorney questions are not evidence. If she's answering questions, I don't know, that's not evidence. But she was able to answer many of the bias questions about prior gang membership, relationship to store owner, relationship to family members, those type of questions. So it's not that the answers are the evidence, you're absolutely right, but the fact that she was able to answer it, maybe it didn't show bias in her answer is not what matters, but it's the fact that she was able to answer it. But I would disagree with the fact, the idea that she was able to answer many questions. There were really only three categories of questions that she was able to answer. One was about her relationship with the victim's sister. Which goes directly to bias and potential incentive. Which creates, which gives rise to a potential for bias. One was about her gang membership, which she denied. Which again goes directly to bias. You don't like the answer, but she was able to answer it. So I don't think that whether the answer helps you or not is what's relevant. It's whether or not she was able to answer those cross-examination questions. What's relevant is whether her answers in any way cast doubt on her ability to identify Robinson in 2015. I don't think any of those questions did. This is not what, this is not the situation, say, in Schaeffer's, where the witness was able to answer questions, things like, gave answers about whether she was impaired at the time of the incident, whether she feared prosecution. So I guess, Mr. Rayfield, I'm curious, where would you draw the line then? You say that a witness needs to recall, have some memory of, you know, that might be relevant. And you say that here, the witness didn't have any recollection. And so what sort of recollection does a witness need to qualify under the rule that you're proposing? I think that when the memory loss is genuine, as it is in our case, the witness has to at minimum remember the defendant, the identification, and the events surrounding the identification. So take, for example, you know, I was thinking about this in the context of the hearsay rules and, you know, recorded recollection, right? So 8035 says that where a witness doesn't remember anything, right, they can basically attest to, say, if there were notes that they took near the time of the incident, they can attest to that. And as long as they can, and as long as there's foundation that it accurately reflects the witness's knowledge, then it's admitted. Is your rule basically saying that that exception would not apply in any criminal case? I apologize, Your Honor. I'm having a little trouble understanding the question. So the witness is able to take notes at the time of the incident? Right. So either the witness takes – so the rule is on a matter the witness once knew but now cannot recall, okay, was made or adopted by the witness when the matter was fresh in the witness's memory and accurately reflects the witness's knowledge. So if you meet those standards, which I think she would here, then that past recollection recorded would come in whether – under 803 at least – whether or not she remembered anything. And so is your rule then that 8035, which has been in existence for a long time, should not apply – it's unconstitutional as applied in the criminal context? I'm not saying it's unconstitutional. I think you would have to ask a separate question of whether that testimony would comply with the Confrontation Clause. I think in this – I haven't – I'm not very familiar with the case law behind this rule, I apologize, but I do – I agree that if there was no prior opportunity for cross-examination in that situation, then no, the Confrontation Clause would not permit such testimony. And I think that makes sense because the entire point of the Confrontation Clause is that you can't expect – you can't necessarily assume that a witness is going to tell the same story that she told before when she's actually forced to come into the courtroom, look the defendant in the eye, and repeat the accusation in the uncomfortable presence of the defendant. Anise – that never happened with Anise. She made her identification in the very friendly presence of a state's attorney and a police officer who were trying to get her help. So I mean – so I want to – I just want to emphasize that, again, it's critical that the only reason the government called Anise was to verify her identification. In all of the other cases that the parties talk about in their briefs, the witness has something to contribute beyond just saying, I recognize this person in the video. In Owens and Cookson, the witnesses were the victims of the crimes. But why does that matter? I mean, it's pretty significant. She watched the video that was taken at the store of the defendant who was convicted for this pointing a gun and shooting somebody. And she was able to review the crime that was committed and say, I can identify that person. That's very significant evidence. I don't understand the distinction between, well, she wasn't there at the time he shot him. He shot the other person. It's extremely significant evidence. I'm not denying that. I'm saying the very fact that it was so significant and that there was no other way for the defendant to undermine the statement is what makes the – is what really implicates the Confrontation Clause here. All you have to look at is what happened with the other witnesses who looked at the video and attempted to identify the defendant to see what could have happened if Anise had testified. Regina Banks was one of the three witnesses. She came to the stand and basically completely fell apart. She couldn't identify Robinson in the video at all. Derek Swanson came to the stand and admitted that he couldn't identify Robinson based on his face but only based on his walk and his clothing. Ciara Robinson, the third witness, could identify the defendant, but she couldn't – but on a cross-examination she had acknowledged that she couldn't – that one of the still images was too dark. Mr. Mayfield, I want to switch gears real quickly because you're – we're into your rebuttal time, but I can give you a little bit extra. To the next topic, I am having a hard time understanding why you want to bring an ineffective assistance of counsel claim on direct appeal. And I want to make sure that you – and significantly your client realizes that if you bring this on direct appeal, you can't – he cannot bring a separate challenge for ineffective assistance on collateral review. You don't get any further development of the record on factual issues. And we have said in prior cases that it is almost inevitable that defendants are better served by pursuing these claims on collateral review than on direct review. So I want to make sure you and your client really want to pursue the ineffective assistance of counsel claim on direct review and make sure your client is aware of those risks. Yeah. I mean, I've obviously gone over that with my client. We think it is appropriately raised here because it's so closely linked to the confrontation clause claim. In every case where a court has denied relief based on a witness's memory loss, it has emphasized what counsel did extensively on both cross-examination and during closing arguments. And our position is that none of that happened here. Okay. Thank you. I'll give you your two minutes back for rebuttal since we took it. Mr. Roy and Mr. Berry, good morning. I should have acknowledged at the beginning that you were appearing remotely and you were present, and I assume you can hear us okay. I can. Thank you, Your Honor. Good morning. Good morning. Mr. Roy, whenever you're ready. Thank you, Judge. Good morning. May it please the Court. Opposing counsel, Attorney Michael Roy on behalf of Appellant Derek Swanson. I do not have a lot of time, so I'm going to get right to it. I just want to start by recognizing that this issue probably seems relatively unimportant, especially when attached to a co-defendant's case. I realize we're like quibbling over one minor condition of supervised release. That's going to go into effect 20 years from now. But there is an institutional benefit to reviewing these types of claims. I know I personally have had about half a dozen or so of these discrepancies between oral and written judgment claims. Many of them the government has either conceded or agreed to stipulate a remand on them. It is a recurring problem, and only in these appointed direct appeals do we have another attorney actually reviewing the written judgments to check if they correspond with the oral rulings. Why doesn't the written judgment here just clarify the district court's intentions with respect to which condition? I think what's unambiguous is the judge's intent to prevent the probation officer from entering the workplace. I mean, defense counsel basically cleared his throat, and Judge Tharp jumped in and said, yes, I agree, I'm going to grant this objection. So Judge Tharp very clearly did think that it was a concern to not have probation interfering with the workplace. He would have been aware of the parsimony principle, known that conditions should be no greater than necessary for, in this case it would probably be rehabilitation would be the sentencing goal. He wanted to ensure that Mr. Swanson was able to find employment, and it would have made more sense for him to be striking both conditions. But there is a significant difference between the two conditions, right, with regard to when the probation officer can enter the workplace. With regard to 16, the probation officer can enter the workplace really at any reasonable time given any reasonable notice, right? And in 23, the probation officer needs something else, right, needs reasonable suspicion, right? And so it seems reasonable for the court to make, and for counsel, frankly, to make that distinction between the two because you don't want a probation officer just willy-nilly coming to your workplace. On the other hand, if you provide some basis, that seems like it's a whole different category. I agree completely, Judge Lee. But I think they both have one common element, which is intrusion into the workplace based off of reasonable discretion of the probation officer. I mean reasonable suspicion is a relatively low bar. It's like a Terry stop, right? And what actually makes condition 23 more reasonable Would your analysis be different if the standard was probable cause? So in other words, if probation officer probable cause to enter the workplace? I don't think so, Judge. I think the reason why 23 is more burdensome is not so much the search condition itself but the warning he has to give to potential employers. I think it seems to me that condition number 23 is less burdensome and it's more protective because there's a threshold that the probation officer needs to meet to enter the workplace. I think where the burden comes in is in the job interview process when he has to explain to any potential employer that if you hire me, my conditions require me to warn you that your entire workplace could be searched if they suspect me of anything. I mean most employers aren't going to want to hire someone who's going to bring that kind of condition with them. I see I'm already in my rebuttal time, but the last point I wanted to make is why I think 3583E2 is not an adequate substitute for this. I realize that we can always, or not we because I won't be representing him anymore after this appeal, but hypothetically he could file a pro se motion to modify the conditions later. However, he's not going to have counsel in the future, and when he actually gets released, if they're re-reviewing his conditions, we have no idea if Judge Starpe is going to be on the bench in 2044. He might be, he might not be, and what we want to hammer down is the intent of Judge Starpe on these conditions, which is why if it's ambiguous, I'd recommend instead a remand similar to Zapata for clarification. Thank you. Thank you, Mr. Roy. Mr. Berry. Thank you, Your Honor. May it please the Court, my name is Albert Berry. I represent the appellee of the United States in this matter. Thank you for allowing me to appear via video. I want to start with Mr. Robinson, and in regards to Mr. Robinson, I want to make clear that the district court properly admitted Anise Robinson's prior grand jury testimony as evidence in that case. This case is in line with what this court decided in United States v. Schaffer's. When a witness has a memory loss under Rule 801 D1A, if the person testified in a grand jury and it's inconsistent with that memory loss, the government is allowed to enter that grand jury statement into evidence as substantive evidence, and that's exactly what happens here. The appellant raises issues about feigned versus genuine memory loss, and that's not something that's borne out in the cases. In fact, in United States v. Gadjo, the court stated that that's not relevant. In fact, the court stated that cases should not determine or distinguish between the two. It said that we shouldn't worry about whether the witnesses are tonical or not. It's simply whether the witness has a memory loss and whether that's inconsistent with their prior statement, and that's what happens here. Mr. Berry, what are the limits to what you're arguing? You seem to be saying as long as the person is physically present, that's sufficient. I know we had a lot more than that here. She was able to answer various questions, but in terms of limiting principles, where are they in the government's argument? Thank you, Your Honor. The limits and principles are exactly what we stated in Schaffer's. You can't have an individual that sits there and stares and does not answer any questions, a person who claims a privilege. Those things would be out of bounds for inconsistent statements. However, here, as Your Honor stated, there is a lot more that's taken place here, and there was an opportunity for cross-examination in this case. The witness was allowed, the defense was allowed to take advantage of some realistic weapons to undermine the credibility of Anise Robinson, and in fact did so when they cross-examined her about her bias. As Your Honor stated earlier, and as laid out in the brief, there are many instances in which Anise Robinson remembered certain things about her past, and those biases were brought out in her testimony. I want to state also that we believe that it was proper in the way it was admitted. However, even if the court finds that it was not, we believe that there's harmless error here. We do believe that the evidence in the case was sufficient enough, even without Anise Robinson, to show that the defendant was guilty beyond a reasonable doubt. How can we say that Anise's testimony didn't contribute to the verdict? Yes, Your Honor. What we have here is a series of events. It's not just the identification of the individual that committed the murder that would give you a violent crime and aid of racketeering murder. This isn't just a simple murder. It's a murder that has a bunch of different ties to it and a bunch of different elements. We do have in defense counsel, excuse me, appellant argues about Sierra Robinson. What he fails to mention is that Sierra Robinson was on direct, cross, and redirect examination. All we talk about here is the cross examination. On direct examination, Sierra Robinson identified her cousin, whom she grew up with, whom she lived in a house with as the individual that was in the video and in still pictures. On cross examination, defense counsel asked a question about one of the pictures. In that cross examination, Sierra Robinson stated that she could not identify, however, from that picture. However, there was a paper form of the picture where it was clearer and she would identify. Defense counsel took it a step forward and went to the next exhibit and stated, and you can't identify here either. She said, I would disagree with you. So Sierra Robinson did disagree with defense counsel in not being able to identify an individual in one of the photos and said that she could clearly identify the individual as her cousin, Pierre Robinson. Though she did admit to a bias, she stated on redirect examination that she was clear that that individual in the video and in those photos was Pierre Robinson. Now, if you take this in conjunction with the other evidence in the case, 40 minutes prior to the murder that took place in the store, there is a posting, and I think it's a government exhibit 223. It's a posting that Pierre Robinson put online. And in that posting, which has a lot of words that are slang, but were interpreted during the trial, Pierre Robinson basically promised to get revenge for the murder of a slain fellow gang member, Mr. Chris Braggins. 40 minutes before the murder, you take that through line and you go to exhibit 102, which is the compilation of the murder. An individual comes in, covers his face as he comes in the front door, walks to the back of the store, turns around and comes back towards the front of the store with his face uncovered. As the victim passes by of Mr. Robinson, the defendant covers his face again, goes outside, comes back in, pulls out a revolver and fires at the victim. This is all relevant because later on, Mr. Robinson posted a video online with Mr. Swanson, who was the cooperator, where he waves a revolver in the camera and states no face, no case. That was explained to the jury as in a through line can be brought there, that an individual who was pointing a revolver in the camera and the murder was committed with a revolver, no face, no case, he didn't have a face that was in the camera. Additionally, Mr. Robinson had a posting, which was a government exhibit 105 and 105 underscore one. In that video, Mr. Robinson is back in front of the Eberhardt store on Saturday night at Eberhardt, talking about the murder that he committed. He's actually bragging, says something like Mac sauce and disparaging the individual who was murdered. And underneath, which is 105 underscore one, the caption is hashtag back down memory lane, three target emojis and a smoke, no smoking emoji. And that was explained to the jury. Also, you take that through line and then you have the identification of Sierra Robinson. You have the identification of Mr. Swanson, who's a fellow gang member who the jury saw the defendant with pictures throughout the trial of social media evidence and saw also video of the two together. Mr. Swanson stating that he Mr. Robinson confessed to him in a barbershop where the council said that he didn't name the barbershop. However, he named the owner of the barbershop and he wasn't specifically pushed to ask to name all the individuals that were there. All of that taken together, put in front of a jury show more shows an identification. If you take out these Robinson, there's an identification by two individuals who know him well. And then there's also all the other evidence that's necessary to create, to have a violent crime and eat a racketeering murder. This is the government's position that therefore it's a harmless error. As we step forward, as your honor stated, the ineffective assistance of counsel claim is that is that is a high standard to meet. And I don't think that the appellant meets it here with regards to Mr. Berry on ineffective assistance of counsel claims. I think all other circuits besides ours really declined to reach these claims on direct review where the record on appeal isn't sufficient to address them. I know this may not be the case to take that issue up, but is that something this court should consider? I believe so, your honor. The record here is not complete. There's a lot of insinuations as to what defense counsel may have done, should have done. What's the reasoning behind their strategy and in the government's position in trying these cases a lot? The strategy isn't always to combat just the murder, because that's only one of the elements of it. If counsel feel that the murder is is actually proven, there are other avenues. You have to find that there's an enterprise and that that was something that was argued here throughout the entire case, whether it was an actual enterprise, whether the defendant was a part of that enterprise that was argued extensively throughout the case, whether the enterprise engaged in racketeering. That was a big section of the cross examination of Mr. Swanson, whether that affected interstate commerce. That's also a section that defense counsel argued against. And we just left here to kind of imagine what the strategy would be because there was no hearing about what it was. So I don't believe that the court should address it. However, even if the court decides to address it, I don't think it reaches the level of plain error, which is the standard. Why shouldn't the standard be de novo, given that we're dealing with the confrontation clause? And there's a little bit of inconsistency in our case law on what the particular standard is. It appears, Your Honor, and I think if you're talking about the Shookery case that was that was cited by defendants, where it was stated that it should be a de novo review. I think the inconsistency there is that case cites a case, Stoya, and Stoya is based off of a 2255 review. Stoya in and of itself cites a case called Bond, which is also based off of a 2255 review. And that's not the case that we have here. Our case law, I would say Cates is what controls. Cates says that the proceedings in the district court determine the guilt or innocence. It's unlikely to show conclusively whether the lawyer's representation was inadequate and had an effect on an outcome. So it has to be in our position that there should be an evidentiary hearing below, raised to 2255 in order for the case or in order for this court to determine a de novo. I want to just touch a bit on Mr. Swanson. Your Honor, during the sentencing of Mr. Swanson, defense counsel was was interrupted a bit. However, defense counsel did state that he had one issue. And there was one issue that was covered by Judge Stark when he when he actually went ahead and had the written order. So the one issue was the defendant's discretionary condition 16, which is that the probation officer can visit the defendant at any time. I mean, as Judge Lee stated, that's the more that's the more that's the more more least restrictive one. That's the one that where he can come at any time and visit. And it's our belief that that's what defense counsel was speaking about in that case. However, even if there was some ambiguity, we don't believe that there was. Case law says that the written order would clarify that ambiguity. And in this case, the case, excuse me, Judge Stark clarified that ambiguity by only unchecking discretionary condition 16 and not discretionary condition 23. I have a little bit more time. But thank you. If there if there are no questions, I would just ask that you uphold the low court's decision. Thank you. Thank you, Mr. Perry. Mr. Rayfield, we'll give you your two minutes back since we asked you a lot of questions. So as for the cases that have been decided by this court, I don't think this court has ever faced the combination of facts that are present here. Where a witness genuinely has no memory of the defendant or the prior identification. Can I ask what you base the genuinely on? Because as I read the transcript, there were. She remembers some things. Right. So what what can be the standard for a judge to gauge whether something's genuine or not? Right. So so she she testified that she remembered that she couldn't remember a lot, but that she did remember certain things. And there was no dispute in the district court that that her that her memory loss was genuine. The burden of proof was on the government to establish an exception under the Confrontation Clause. So if I'm right about the about the law, if I'm right, that there's a distinction between feigned and genuine memory loss. The government had the burden to prove that she was feigning her memory loss and the district court would have had to make a finding on that point. But because you have both feigned, both genuine and what we call what we're referring to as in shorthand as total memory loss. This case is just like the Mississippi Supreme Court's decision in Goforth. It's which applied this court's cases and found a Confrontation Clause violation. I just want to address the government's point about a witness who refuses to answer all questions because that I think one of your questions was, where do you draw the line here? Well, we would say that actually the situation where a witness comes onto the stand and pleads the fifth from the perspective of the defendant is actually better than the situation we had here where a witness genuinely has no has no memory of the relevant events. At least in the case of a witness who's pleading the fifth, the fifth, it becomes obvious that the witness has a self-interested reason for for declining to testify. With a niece, the jury had absolutely no reason to fault her testimony, her identification in any way because of the fact that she couldn't remember it. So this is the worst of all possible worlds from the perspective of the Confrontation Clause. Okay, thank you Mr. Rayfield. I understand you're appointed, you and your firm took this for appointment. Thank you very much for your service to the court and for your strong advocacy on behalf of your client. Thanks to all counsel and the court will take the case under advisement. Thank you.